**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2045
_____

GEORGE SMITH,
                              Appellant

v.

SECRETARY UNITED STATES NAVY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-16-cv-02157)
District Judge:  Honorable John E. Jones III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 4, 2021
Before:  GREENAWAY, JR., KRAUSE and BIBAS, Circuit Judges

(Opinion filed: January 29, 2021)
_____

OPINION*
_____

PER CURIAM

George Smith appeals from an order of the United States District Court for the

Middle District of Pennsylvania, which granted summary judgment for the Secretary of

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

the United States Navy in Smith's employment discrimination action. We will affirm the District Court's judgment.

Navy Supply Systems Command (NAVSUP) hired Smith on August 1, 2011, as a probationary employee for a contract specialist position in Mechanicsville, Pennsylvania, at pay level GS-7.[1] Notice of Personnel Action, Dkt. #142-4 at 7. Smith was terminated on March 13, 2012. Smith, who is African American, believes that he was terminated on the basis of his race and color, and as retaliation for filing an equal employment opportunity ("EEO") claim with the agency. He also claimed that while employed, he was subject to a hostile work environment because of his race. In contrast, the Notice of Termination issued by NAVSUP stated that Smith was terminated for three reasons: First, a "failure to follow instruction," noting that on February 7, 2012, Smith refused to meet with Jennifer Dieter, his first-line supervisor, to discuss a work-related incident, and that he insisted in communicating with her only in writing. Dkt. #142-4 at 1. Second, the termination notice cited Smith's "failure to work amicably with co-workers," explaining that he "constantly complain[ed], talk[ed] negatively about others, and alienate[d] those who tr[ied] to help [him]." Id. at 2. Finally, the notice stated that Smith caused a

---

constitute binding precedent.

[1] Smith argues that he was not a probationary employee because of his prior Government service (with the U.S. Postal Service), Appellant's Brief at 12, but he is wrong as a matter of law. See 5 C.F.R. § 315.802 (stating that prior federal civilian service is credited towards completion of the probationary period if it is in the same agency, the same line of work, and occurs after a break of no more than 30 days).

"disruption in the workplace" on February 3, 2012, during which he was "yelling and arguing," that he refused to discuss the incident with his supervisor, and that "co-workers have experienced angst due to [his] constant slander, complaining, and disruptive behavior."[2] Id. at 2.

Smith's EEO agency proceedings were unsuccessful, so he filed a complaint in the United States District Court for the Eastern District of Texas, where he lived. After Smith twice amended his complaint, the Texas federal court transferred the complaint to the Middle District.[3] Smith's second amended complaint, Dkt. #12, raised three claims: (1) a claim of disparate treatment based on race, evidenced by the Defendant's alleged failure to train Smith and by his later termination; (2) a claim that his termination was in retaliation for his EEO activity; and (3) a claim that he was subjected to a hostile work environment because of his race.

After the District Court denied without prejudice the parties' cross-motions for summary judgment, see Dkt. #134, the Magistrate Judge held a telephone conference with the parties, see Dkt. ##135, 136. The parties agreed that there had been sufficient discovery and agreed that the District Court could decide the motion for summary

---

[2] The notice appears to refer to a verbal confrontation between Smith and a co-worker who was assigned to train him at the time, Matt Dawson.

[3] All remaining references in this opinion to the "District Court" refer to the United States District Court for the Middle District of Pennsylvania.

judgment that the Defendant was to file before Smith filed one of his own.[4]  Dkt. #137.

After the Defendant's motion for summary judgment was fully briefed, the Magistrate

Judge recommended that the District Court grant the Defendant's motion.  Dkt. #148.

The District Court adopted the Magistrate Judge's Report and Recommendation in its

entirety, Dkt. #154, over Smith's objections, Dkt. #151.  Smith timely appealed.  Dkt.

#155.

We have jurisdiction under 28 U.S.C. § 1291.  "We review the District Court's

grant of summary judgment de novo."  Jutrowski v. Twp. of Riverdale, 904 F.3d 280,

288 (3d Cir. 2018).  Summary judgment is proper when, viewing the evidence in the light

most favorable to the nonmoving party and drawing all inferences in favor of that party,

there is no genuine dispute about any material fact and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a); Turco v. City of Englewood, N.J.,

935 F.3d 155, 161 (3d Cir. 2019).

To establish a prima facie case of disparate treatment, an employee must set out

four elements, the last of which is that he suffered an adverse employment action under

circumstances that give rise to an inference of unlawful discrimination, such as where the

---

[4] Smith complains in his brief here that this process amounted to "misleading a pro se." Appellant's Brief at 2.  If he is arguing that the District Court deprived him of procedural due process, we reject his claim.  Smith had ample opportunity to present his side of the story by opposing the Defendant's summary judgment motion, and "he has not set forth what he would have brought to the court's attention" if he had filed his own summary judgment motion.  See In re Tribune Media Co., 902 F.3d 384, 397 (3d Cir. 2018) (quoting In re Bartle, 560 F.3d 724, 730 (7th Cir. 2009)).

employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

We agree with the District Court that Smith did not put forth evidence that his termination occurred under circumstances that give rise to an inference of unlawful race discrimination. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (per curiam) ("The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.") (internal quotation marks and citation omitted). As to his claim that he was not sufficiently trained, Smith named two potential comparators: Stephanie Risk and Ed Gallagher, both of whom are white. He claimed that both of them received more significant hands-on training than he did, which allowed them to succeed in the job.[5] But Risk and Gallagher were hired by a different organization (NAVSUP was their "host" but not their employer), they were both hired at pay level GS-9 (as compared to Smith's GS-7 level), and they were both on different career paths, requiring different skill sets. Both Risk and Gallagher were rotating through the department, unlike Smith, who was on a

---

[5] Smith appears to argue that he was terminated, in part, because he did not perform well in the job, due to his lack of adequate training. Appellant's Brief at 4-5, 8-9. Even if we assume the truth of that assertion, Smith failed to establish a prima facie case of disparate treatment, as we explain above.

path to be a permanent employee of the department. During their time in the department, Risk was required to get a broader overview of contracting, Dkt. #142-3 at 29, and Gallagher was required to take more and different classes, Id. at 30. Thus, we agree with the District Court "that there is no material dispute that Risk and Gallagher are not similarly situated employees for the purposes of Title VII." Report and Recommendation ("R&R"), Dkt. #148 at 18.

As to his claim that he was terminated based on his race, we agree with the District Court that Smith did not identify any similarly situated employee outside his protected class who failed to follow instruction, failed to work amicably with co-workers, and disrupted the workplace, but who was not terminated. Smith does argue generally that two of his white co-workers failed to follow instruction, failed to work amicably with co-workers, and were "a huge disruption in the workplace," but were not terminated. Appellant's Brief at 11. But the co-workers he named were long-term employees, not probationary employees like Smith. See In re Tribune Media Co., 902 F.3d at 403 (explaining that even if a plaintiff has shown that another worker "was disciplined more leniently" for similar conduct, he did not succeed in establishing a prima facie case because he had not shown that he and the co-worker were "similarly situated in all respects," including their "tenure and status").

Next, we agree that Smith established a prima facie case of Title VII retaliation because he established that: "(1) [he] engaged in activity protected by Title VII" by filing

an EEO complaint on February 6 or 7, 2012;[6] "(2) the employer took an adverse employment action against [him]"—he was terminated on March 13, 2012; and (3) one could infer "a causal connection between [his] participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted); see also Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 260 (3d Cir. 2017) (explaining that a plaintiff can establish an inference of causation through temporal proximity between the protected activity and the adverse action).

But after establishing a prima facie case, "the burden shifts to the employer to provide a legitimate, non-retaliatory reason for its conduct." Id. at 257. NAVSUP did so by explaining that Smith was fired for (1) failure to follow instruction; (2) failure to work amicably with co-workers; and (3) disruption in the workplace. Dkt. #142-4 at 1-3. The burden then shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action." Id. (quoting Moore, 461 F.3d at 342). Smith's case fails at that step.

Smith has argued that he was fired in retaliation for filing the EEO complaint on February 6, 2012. The parties do not dispute that Dieter learned about the complaint on February 7. However, Dieter had contacted human resources months earlier, on

---

[6] The R&R notes that the parties listed different dates for the complaint, Dkt. #148 at 25,

December 12, 2011, to ask about the process for terminating Smith, based on his "complaining" and "disparaging remarks" about coworkers.  Dkt. #142-4 at 88.  Dieter stated in the email that she wanted "to be fair to the employee, yet at the same time [felt] a responsibility [to the employer] to terminate if appropriate."  Id.  The evidence that Dieter was looking into terminating Smith on some of the grounds mentioned in his termination notice well before he filed an EEO complaint undermines Smith's argument that the reasons given in the termination notice were pretextual.  Nor did Smith point to any evidence in the summary judgment record to show that his EEO complaint motivated the employer to comb through his record to justify his firing.  Smith did not meet his final burden to "produce evidence sufficient to raise the inference that [his] protected activity was the *likely* reason for the adverse [employment] action."[7]  Carvalho-Grevious, 851 F.3d at 259 (internal quotation marks omitted).  Thus, summary judgment was properly granted for the Defendant on Smith's retaliation claim.

Finally, Smith failed to state a prima facie case of a hostile work environment claim because he did not set forth sufficient evidence that his workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal

but the difference is not material to our analysis.
[7] Smith's conclusory statement that he "disput[ed] all alleged pretextual claims of the termination letter," does not change our conclusion.  Appellant's Brief at 7.

quotation marks and citations omitted). Smith's only specific claims are based on his treatment by two co-workers and a staff member.[8] An employer is liable for a hostile environment created by non-supervisory employees only if "the employer failed to provide a reasonable avenue for complaint," or "the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." In re Tribune Media Co., 902 F.3d at 400 (internal quotation marks omitted).

Smith noted that two co-workers who were assigned to train him got angry with him. After Smith complained to Dieter about the problem with the first trainer, Nick Stellhorn, Dieter moved Smith's desk, and assigned him (on his request) to train with Matt Dawson. Months later, after Dawson had a verbal confrontation with Smith, Smith refused to discuss the incident with Dieter. Smith did not identify any race-based intimidation, ridicule, or insult by Stellhorn or Dawson, or point to any evidence that would lead one to infer that any animosity was due to Smith's race. And Dieter swiftly addressed the issue with Stellhorn and tried to address the issue with Dawson. Thus, the

---

[8] Smith argues that the District Court erred by not considering his claims that other co-workers were creating a hostile environment. Appellant's Brief at 17. But although he argued in the District Court that "Responsible Management Officials encouraged section employees to harass and attack Smith due to his race and color after Smith file the EEO," Dkt. #145 at 29, Smith's record citations do not show that management was encouraging others to complain. On the contrary, the citations show that Smith's co-workers were coming to Dieter to complain about how Smith was negatively contributing to the work environment, and because of their concerns that Smith was trying to attack their work performance. See, e.g., Dkt. #145-4 at 355-56.

District Court properly granted the Defendant summary judgment on the hostile environment claim as to Stellhorn and Dawson.

Finally, Smith also alleged that he was subjected to a hostile work environment by a staff member, Shirley Young. Young asked Smith how it felt "to be the token Black man." Smith also alleged that Young intentionally lost Smith's paperwork to acquire a computer. Smith's contention that Young intentionally lost his paperwork is not supported by evidence, and her one-time insensitive comments are not sufficient to establish a hostile workplace. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal quotation marks and citation omitted). Thus, Smith also has not set out a prima facie case of a hostile work environment claim.

For these reasons, we will affirm the District Court's judgment.